| | |
|---|---|
| **TERRY JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-2736** |
| **BURL CAIN** | **SECTION "N"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Terry Johnson, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Johnson was indicted by a grand jury in Orleans Parish on May 13, 1983, for the second degree murder of Jo Ann Gordon.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On March 22, 1983, between 2 and 3 o'clock a.m., Jo Ann Gordon was struck in the head by a bullet fired from outside her bedroom window. She died later that morning.
>
> On the night in question, the victim's mother, Creola Gordon was awake and watching television.  The victim was in her bedroom curling her hair.  Mrs. Gordon heard a knock at her daughter's window.  She next heard the defendant calling "Jo Ann, Jo Ann".  A few seconds later she heard a shot.  She rushed into the room and found her daughter lying on the floor with blood coming from her head.  The police were summoned.  The victim, who was still alive, was transported to New Orleans Charity Hospital where she died at 10:50 a.m.
>
> The investigating officers concluded that the bullet had been fired from outside and had entered the window at eye level.  It passed through the screen, window pane and curtain.  The officers asked Mrs. Gordon if she knew of anyone that would be a suspect.  She related to them an incident involving the defendant wherein he poured gasoline along the side of the house because Jo Ann denied him visitation of their daughter, Brandy.  A follow up investigation was conducted wherein defendant and his girlfriend, Celestine Jordon, were questioned relative to defendant's whereabouts at the time of the shooting.  Celestine Jordon corroborated defendant's alibi that he spent the night with her at her apartment.  She stated she picked up the defendant at the Arabella Street bus barn at 1:30

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Indictment, 5/13/83.

a.m. when he got off from work. (Both she and defendant worked as bus drivers for New Orleans Public Service.) From there they drove the new bus route she was assigned to drive later that morning to familiarize herself with it, and then proceeded on Interstate 610 to her apartment in Eastern New Orleans. She estimated they arrived at 2:00 a.m. and that defendant spent the night. She did admit, however, that it is possible that defendant could have left and come back without her knowledge because she is a heavy sleeper.

Mrs. Gordon, grief stricken and panic stricken for her own safety, refused to speak to anyone about the shooting. She covered all the windows with sheets and stayed alone for about three weeks before she revealed to her family and the police that she heard the defendant's voice calling to Jo Ann before she was shot. Just two weeks prior to the murder, the defendant threatened to kill Jo Ann and the whole family and had poured gasoline around her house.

Defendant testified in his own behalf and denied shooting the victim.

State v. Johnson, 458 So.2d 539, 541-42 (La. App. 4th Cir. 1984); State Record Volume 2 of 3, Fourth Circuit Opinion, KA-2009, pages 2-4, October 3, 1984.

Johnson was tried before a jury on September 26 and 27, 1983, and he was found guilty as charged.[4] The state trial court sentenced Johnson on November 4, 1983, to serve life in prison.[5]

---

[4]St. Rec. Vol. 1 of 3, Trial Minutes, 9/26/83; Trial Minutes, 9/27/83; Jury Verdict, 9/27/83.

[5]St. Rec. Vol. 1 of 3, Sentencing Minutes, 11/4/83.

On appeal to the Louisiana Fourth Circuit, Johnson's counsel raised nine grounds for relief:[6] (1)(a) The State failed to give adequate notice of its intent to use other crimes evidence, and (b) the trial court erred in permitting the State to introduce evidence of other crimes. (2) The trial court erred in permitting the State to ask leading questions. (3) The trial court erred in improperly curtailing defense counsel's cross-examination of State witnesses. (4) The trial court erred in failing to admit evidence it improperly found to be hearsay. (5) The trial court erred in failing to admit evidence which was offered for impeachment purposes only. (6) The trial court erred in admitting inadmissible hearsay evidence. (7) The trial court erred in allowing the prosecutor to question the defendant improperly. (8) The trial court erred in permitting the jurors to question witnesses on the witness stand. (9) The defendant was denied a fair trial because the judge did not conduct the trial in a fair and impartial manner.

The appeal court affirmed the conviction on October 3, 1984, finding no merit to eight of Johnson's claims. With regard to Johnson's challenges in Claims Nos. 1 and 8, the court found that Johnson failed to make a contemporaneous objection as required by La. Code Crim. P. art. 841 to preserve the claims for appellate review. Johnson's

_____

[6]State v. Johnson, 458 So.2d at 542; St. Rec. Vol. 2 of 3, 4th Cir. Opinion, KA-2009, p. 4, 10/3/84.

subsequent writ application to the Louisiana Supreme Court was denied without reasons on September 10, 1985.[7]

Johnson's conviction became final 90 days later, on December 9, 1985, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Ten months later, on October 13, 1986, Johnson submitted his first application for post-conviction relief, which was filed in the state trial court on November 21, 1986. He asserted two grounds for relief: (1) He was denied due process because the prosecution knowingly used perjured testimony of the victim's mother. (2) He was wrongfully convicted based on circumstantial evidence which was insufficient to prove his guilt.[8] On December 16, 1986, the state trial court denied the application, holding that these claims had been fully litigated on appeal.[9]

---

[7]State v. Johnson, 474 So.2d 945 (La. 1985); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 84-KO-1842, 9/10/85.

[8]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 11/21/86 (signed 10/13/86).

[9]St. Rec. Vol. 1 of 3, Trial Court Judgment, 12/16/86 (file stamped 12/18/06).

The Louisiana Supreme Court denied his subsequent writ application on March 20, 1987, stating that Johnson first must raise the perjury claim in an application for post-conviction relief in the state trial court.[10] Johnson resubmitted the writ application to the court on July 8, 1987, and that application was denied without reasons on April 7, 1988.[11]

More than three years later, on September 29, 1991, Johnson submitted his second application for post-conviction relief to the state trial court, raising four grounds for relief:[12] (1) Counsel was ineffective for failure to object to jurors' questioning the witnesses. (2) Appellate counsel was ineffective for failure to gather a complete record. (3) The court reporter failed to transcribe the complete record for appeal. (4) The state trial court gave a defective jury instruction on reasonable doubt. The state trial court denied the application on May 5, 1992.[13] He did not seek further review.

Three years later, on June 13, 1995, Johnson submitted his third application for post-conviction relief to the state trial court, this time raising four grounds for relief:[14]

---

[10]State ex rel. Johnson v. Blackburn, 503 So.2d 481 (La. 1987); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 87-KH-0417, 3/20/87.

[11]State ex rel. Johnson v. Blackburn, 522 So.2d 1091 (La. 1988); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 87-KH-1676, 4/7/88); La. S. Ct. Writ Application, 87-KH-1676, 7/13/87 (signed 7/8/87).

[12]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 10/1/91 (signed 9/29/91).

[13]St. Rec. Vol. 1 of 3, Minute Entry, 5/5/92. The record does not contain a copy of the court's order.

[14]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 6/21/95 (signed 6/13/95).

(1) The police used an improper supplemental statement by the victim's mother to establish probable cause for his arrest. (2) The State concealed exculpatory evidence and presented false evidence to the grand jury making the indictment illegal. (3) Counsel was ineffective for failure to file pretrial discovery motions to obtain Mrs. Gordon's initial written statement, for failure to impeach Mrs. Gordon with her initial statement, for failure to disclose the source of documents sought to be used for impeachment, and for failure to lay a proper foundation to have the police officers testify regarding the victim's mother's initial statement. (4) The state trial court gave an improper reasonable doubt charge.

On September 7, 1995, the state trial court denied the application as untimely citing La. Code Crim. P. art. 930.8(A) and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).[15] He did not seek further review.

One year later, Johnson submitted his fourth application for post-conviction relief to the state trial court on September 24, 1996, complaining that the state trial court erred in giving a defective reasonable doubt instruction to the jury.[16] On May 19, 1997, the state trial court denied the application as untimely citing La. Code Crim. P. art. 930.8(A)

---

[15]St. Rec. Vol. 1 of 3, Trial Court Order, 9/7/95. At the time of Johnson's conviction, La. Code Crim. P. art. 930.8 provided a three-year period for a defendant to file for post-conviction relief. In Glover, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under Article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[16]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 9/25/96 (signed 9/24/96).

and <u>State ex rel. Glover</u>.[17]  The court also denied Johnson's motion to reconsider that ruling on September 8, 1997.[18]  He did not seek further review.

Sometime in 1999, Johnson apparently filed another application for post-conviction relief challenging the reasonable doubt jury charge.[19]  The state trial court denied the application on April 5, 1999, for lack of a contemporaneous objection and lack of proof that the charge used was defective.[20]

One year later, Johnson filed an untimely[21] writ application with the Louisiana Fourth Circuit on April 3, 2000, challenging the trial court's prior rulings on the reasonable doubt charge claim.[22]  The court denied relief on May 3, 2000, finding that the trial court did not err when it relied upon La. Code Crim. P. art. 930.8 and the lack of a contemporaneous objection to deny Johnson relief.[23]

---

[17]St. Rec. Vol. 1 of 3, Trial Court Order, 5/19/97.

[18]St. Rec. Vol. 1 of 3, Motion to Reconsider, undated; Trial Court Order, 9/8/97.

[19]The record does not contain a copy of this writ application nor is there any indication of a filing date.

[20]St. Rec. Vol. 3 of 3, Trial Court Judgment, 4/5/99.

[21]Petitioner had 30 days from issuance of the trial court's order to file for review in the Louisiana Fourth Circuit. La. App. Rule 4-3; La. Code Crim. P. art. 922.

[22]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2000-K-0784, 4/3/00 (signed 3/15/00).

[23]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2000-K-0784, 5/3/00.

On July 17, 2000, Johnson submitted a pleading in the state trial court entitled Motion to Correct an Invalid Sentence.[24]  He argued that the indictment in his case was insufficient notice of the charges against him.  The state trial court construed it to be Johnson's sixth application for post-conviction relief, and on August 28, 2000, denied the application as untimely pursuant to La. Code Crim. P. art. 930.8(A) and State ex rel. Glover.[25]

Two years later, on August 5, 2002, Johnson submitted a seventh application for post-conviction relief to the state trial court, arguing that the Louisiana Supreme Court's opinion in State v. Palermo, 818 So.2d 745 (La. 2002), established that the State had relied on unconstitutional evidence to show system and intent to convict him; specifically, his prior conviction for placing combustive materials with intent to set a fire. In State v. Palermo, the Louisiana Supreme Court held that the criminal provision which charged "placing combustibles with intent to set fire" was unconstitutional because it altered the State's burden of proof from that for the attempted arson statute.[26]

---

[24]St. Rec. Vol. 1 of 3, Motion to Correct an Invalid Sentence, 8/23/00 (signed 7/17/00).

[25]St. Rec. Vol. 1 of 3, Trial Court Judgment, 8/28/00.

[26]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, signed 8/5/02.  The record does not contain a file-stamped copy of this application.

Almost four years later, on June 9, 2006, Johnson submitted a supplemental memorandum in support of this application.[27]  Through enrolled counsel, another supplemental application was filed with the state trial court on March 23, 2007.[28]

The State filed a court-ordered response on June 19, 2007, arguing that Johnson's claim was misleading because the prosecution did not rely on his prior conviction to show system and intent.[29]  Instead, they argued, the prosecution offered testimony regarding Johnson's attempts to burn Mrs. Gordon's home and of his prior threats to kill the victim.  The state trial court held a post-conviction hearing on November 9, 2007, at which the court denied the application as meritless.[30]

Johnson submitted an untimely writ application to the Louisiana Fourth Circuit on December 27, 2007, raising the same arguments as those presented to the state trial court.[31]  The court denied the writ application, finding no error in the state trial court's

---

[27]St. Rec. Vol. 1 of 3, Supplemental Memorandum, 6/16/06 (signed 6/9/06).

[28]St. Rec. Vol. 1 of 3, Supplemental Application for Post-Conviction Relief, 3/23/07.

[29]St. Rec. Vol. 1 of 3, State's Response, 6/19/07.

[30]St. Rec. Vol. 1 of 3, Minute Entry, 11/9/07.  Johnson indicated in his later filed writ application that the reason for the state trial court's denial to be that Mrs. Gordon's testimony was admissible to show system and intent and the prior conviction was still binding even though the law had changed.  St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2008-K-0020, p.2, 1/8/08 (signed 12/27/07).

[31]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2008-K-0020, 1/8/08 (signed 12/27/07).

ruling.[32]   The Louisiana Supreme Court also denied Johnson's subsequent writ application without reasons on December 19, 2008.[33]

## II.   FEDERAL HABEAS PETITION

On March 4, 2009, the clerk of this court filed Johnson's petition for federal habeas corpus relief in which he raises two grounds for relief:[34] (1) The conviction was obtained by use of unconstitutional evidence. (2) The petitioner was impeached by use of an unconstitutional prior conviction.

The State filed a response in opposition to the petition, arguing that Johnson's petition was not timely filed and, alternatively, that his claims are without merit.[35]  In his traverse memorandum in reply to the State's opposition, Johnson argues that his federal habeas corpus petition should be considered timely because the Louisiana law did not change until 2002, which is when he began seeking review in the state courts.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[32]St. Rec. Vol. 3 of 3, 4th Cir. Order, 4th Cir. Order, 2008-K-0020, 2/20/08.

[33]State ex rel. Johnson v. State, 996 So.2d 1129 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2008-KH-0773, 12/19/08.

[34]Rec. Doc. No. 3.

[35]Rec. Doc. No. 9.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[36] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Johnson's petition, which, for reasons discussed below, is deemed filed in a federal court on January 23, 2009.[37]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[36]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Johnson's petition was filed by the clerk of court on March 4, 2009, when the filing fee was paid. Johnson dated his signature on the memorandum in support of the petition on January 23, 2009. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. According to the clerk's office records, the form petition was signed and submitted by Johnson at a later date and I do not consider that to have effected the date of his original submission. Furthermore, the fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The State argues that Johnson's petition was not timely filed in this court. This conclusion is supported by the record.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[38] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Johnson's conviction was final almost 24 years ago, on December 9, 1985, which was 90 days after the Louisiana Supreme Court denied his writ application following his direct appeal.

---

[38]The statute of limitations provision of the AEDPA provides for other triggers which are not relevant here:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> >
> > C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
> >
> > D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

Under a broad reading, Johnson argues or suggests that his post-conviction review of the claims raised in his federal petition could not begin until the Louisiana Supreme Court ruled in State v. Palermo on May 31, 2002. He asserts that the Palermo decision was a change in constitutional law which he could not previously pursue. State court law, however, is not an alternative trigger date recognized in Section 2244(d) for the federal statute of limitations period.

Johnson based his last round of state post-conviction applications on the Louisiana Supreme Court's opinion in State v. Palermo, which was an interpretation of Louisiana law in light of Apprendi v. New Jersey, 520 U.S. 466 (2000). In Apprendi, the United States Supreme Court held that the due process clause requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 489.

Applying Apprendi by analogy, the Louisiana Supreme Court determined in State v. Palermo that La. Rev. Stat. Ann. § 14:54, defining the crime of placing combustive materials, violated due process by depriving a criminal defendant of a right to a jury determination on every element of the crime with which he was charged beyond a reasonable doubt. State v. Palermo, 818 So.2d at 753. The court explained that "[b]y making 'the placing of any combustive ... material in or near any structure ... with the

specific intent eventually to set fire to such structure ... an attempt to commit arson within the meaning of the attempt article of this Code,' the legislature was validly attempting to replace the general attempt provisions of La. R.S. 14:27 with more specific attempt provisions for arson related offenses." Id.

The statute on which Johnson's prior conviction was based was found unconstitutional in State v. Palermo. As noted in the factual summary taken from the appeal of his conviction for second degree murder, the jury at his murder trial heard testimony regarding his prior threats to the victim and her family, including his prior placement of fuel around Mrs. Gordon's home in an effort to burn the house. The State presented this testimony and evidence in an effort to show system and intent. The state courts on post-conviction review held that the State did not simply rely on the prior conviction, but instead offered otherwise admissible testimony explaining the facts of his prior efforts to burn the Gordon's home, and the Palermo ruling did not impact the evidence presented at his trial or change the fact that he was convicted of that charge at the time.

The Palermo decision issued on May 31, 2002, does not meet the requirements of or exceptions to Section 2244 regarding the start of Johnson's federal filing period. The limitations exception, or trigger, found in Section 2244(d)(1)(C), by its very terms, looks

to a new constitutional right <u>created and made retroactive by the United States Supreme Court</u>, not by a state court's interpretation or application of a Supreme Court decision.

In addition, to the extent <u>Palermo</u> derives its reasoning from <u>Apprendi</u>, the federal courts have found that <u>Apprendi</u> is not made retroactive on collateral review. <u>Jackson v. Dretke</u>, 181 Fed. Appx. 400, 410 (5th Cir. May 11, 2006) (citing <u>United States v. Brown</u>, 305 F.3d 304, 310 (5th Cir. 2002)); <u>McCoy v. Casterline</u>, 73 Fed. Appx. 80 (5th Cir. Jun. 24, 2003). Johnson cannot rely on the Louisiana Supreme Court's reference to <u>Apprendi</u> in <u>Palermo</u> as an alternative trigger to his federal limitations period.

Johnson, therefore, has failed to demonstrate an alternative trigger date for his challenge to his present conviction. Thus, the appropriate commencement date for the AEDPA statute of limitations under Section 2244(d) is December 9, 1985, when Johnson's conviction became final. Under a literal application of the statute, Johnson had until December 9, 1986, to file his federal habeas corpus petition. However, the Fifth Circuit has granted habeas petitioners one year after the effective date of the AEDPA within which to file timely petitions pursuant to 28 U.S.C. §§ 2254 and 2255. <u>Flanagan</u>, 154 F.3d at 200; <u>United States v. Flores</u>, 135 F.3d 1000, 1004 (5th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1091 (1999).

The court in "<u>Flores</u> concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral

relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date." Flanagan, 154 F.3d at 200 (citing Flores, 135 F.3d at 1004-05). "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief." Id. (citing Flores, 135 F.3d at 1005).

Because Johnson's conviction became final more than a decade before AEDPA's effective date, he was required to file the instant federal habeas petition no later than April 24, 1997. Johnson submitted his federal petition on January 23, 2009, almost twelve years after the allowable grace period expired, and it must be dismissed as untimely, unless the one-year statute of limitations grace period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  <u>Pace</u>, 544 U.S. at 418-19; <u>Cousin</u>, 310 F.3d at 848.

Johnson has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions.  <u>See</u> <u>Hardy v. Quarterman</u>, --- F.3d ----, No. 08-40161, 2009 WL 2357023, at *3-4 (5th Cir. Aug. 3, 2009) (Equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent

habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the

time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations grace period began to run in Thornton's case on April 25, 1996, the day after the effective date of the AEDPA. The limitations period ran for 152 days, until September 24, 1996, when Johnson submitted his fourth application for post-conviction relief to the state trial court.

Affording Johnson the most generous interpretation, the filing period remained tolled from that date, September 24, 1996, until October 8, 1997. This includes the 30 days Johnson had to seek appellate review after the state trial court denied his motion to reconsider. The AEDPA limitations grace period began to run again the next day, on

October 9, 1997, and it ran uninterrupted for the remaining 213 days of the period, until Saturday, May 9, 1998, or the next business day, Monday, May 11, 1998, when it expired. Johnson had no state post-conviction or other collateral review proceedings pending during that time period. Johnson did not file his next application in the state trial court until sometime in 1999.

I further point out that Johnson also allowed other periods of time to lapse without any proper filing before pursuing federal habeas relief. For example, he allowed ten months to lapse between the denial of his later application on April 5, 1999, and the submission of his untimely writ application to the Louisiana Fourth Circuit on March 15, 2000. He also allowed almost two years to lapse between the denial of his sixth application for post-conviction relief on August 28, 2000 and the submission of his seventh application on August 5, 2002.

The record establishes that, after the effective date of AEDPA, Johnson allowed much more than one year to lapse without any properly filed and pending state court proceeding and without having filed a timely federal petition for habeas corpus relief. Thus, his petition, deemed filed on January 23, 2009, must be dismissed as time-barred.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Terry Johnson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____15th_____ day of September, 2009.

                    JOSEPH C. WILKINSON, JR.
                    UNITED STATES MAGISTRATE JUDGE